UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

JOHN D. LASSITER,

                Defendant.

Criminal case no. 13-cr-20476

HON. MARK A. GOLDSMITH
United States District Judge

---

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

---

After serving well over ten years in state prison for two violent felonies, John Lassiter and his accomplices robbed two banks—both times with firearms. As a result of the armed bank robberies, Lassiter was sentenced to 15 years' imprisonment. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of COVID-19. His motion should be denied.

*First*, Lassiter does not qualify for compassionate release. Because he has not sought compassionate release from the Bureau of Prisons (BOP), as required under 18 U.S.C. § 3582(c)(1)(A), the Court does not have jurisdiction to address his request until he exhausts his administrative remedies. More importantly, even if he had exhausted, Lassiter does not satisfy the criteria for compassionate release because his ailments do not meet the conditions set forth in U.S.S.G. § 1B1.13.

Further, Lassiter's offense and criminal history make him a danger to the community, which precludes release under U.S.S.G. § 1B1.13(2). Finally, the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)— weigh heavily against release because Lassiter is a danger to the community.

*Second*, the Bureau of Prisons has implemented strict precautions to minimize the virus's spread in its facilities. Also, the BOP is assessing its entire prison population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement. This process necessarily requires the Bureau of Prisons to identify the best candidates for release, ensure that their homes are suitable for home confinement, and arrange a way to quarantine each of them for 14 days.

### Background

John Lassiter has proven himself to be a violent individual and a serious danger to the community.

On May 30, 2012, Lassiter and his accomplices drove to the Dort Federal Credit Union in Flint to rob it. (R. 12: Rule 11 plea agreement, 27-28). They brought firearms and face coverings to carry out the robbery. (*Id.*). Once inside, Lassiter and his accomplice brandished the firearms in order to place the credit union employees in fear and make them turn over money. (*Id.*). After obtaining

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 2

nearly $380,000, Lassiter and his accomplice fled the bank, entered a parked vehicle outside, and drove off. (*Id.*).

This was not the only armed bank robbery Lassiter committed around this time. On April 30, 2012, Lassiter and two accomplices robbed Citizens Bank in similar fashion. (R. 1: Complaint, 3-7). The group entered the bank armed with firearms and wearing facial coverings. Once inside they brandished their weapons and obtained nearly $20,000. (*Id.*).

These armed bank robberies were not out of character for Mr. Lassiter. Indeed, he has a history of violent offenses. In November of 1988, Lassiter and his friend were both armed with .22 caliber rifles when they entered a residence occupied by three rival youths. (PSR ¶ 33). Lassiter and his friend fired their weapons multiple times, one of the bullets struck a 16 year old victim in the chest. (*Id.*). Lassiter was convicted of assault with intent to murder as a result of this incident. (*Id.*).

In August of 1993, Lassiter approached a victim outside of a party store and struck him in the head with a .45 caliber revolver, knocking him to the ground. (PSR ¶ 34). Lassiter then pointed the firearm in the victim's face, who dropped his car keys to the ground. (*Id.*). Lassiter grabbed the keys and fled the scene in the victim's car. (*Id.*). Lassiter was convicted of armed robbery, unlawful driving away of an automobile (UDAA), and felony firearm as a result of this incident. (*Id.*).

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 3

Despite his violent criminal history, Lassiter has moved for compassionate release, citing hypertension, a "bad kidney", and the COVID-19 pandemic. Lassiter has only served approximately 7 years of his 15 year sentence this Court imposed in November of 2013; his projected release date is February of 2026. Lassiter is 50 years old and is currently incarcerated at FCI Elkton. Finally, on May 22, 2020, Lassiter was tested for COVID-19, despite being asymptomatic, with negative results. (Exhibit 1, pgs. 1, 18-19).

## Argument

**I. The Court should deny Lassiter's motion for compassionate release.**

Lassiter's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Quite the contrary: a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow. For several reasons, Lassiter has not satisfied the particular requirements for compassionate release.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 4

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020).

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in U.S.S.G. § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2).

*Third*, even if a defendant is eligible for compassionate release, the district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Lassiter is disqualified for a sentence reduction for all three reasons. He has not exhausted his administrative remedies, his medical conditions are not extraordinary and compelling, and he is an exceptionally dangerousness offender.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 5

A.   The Court is barred from granting release because Lassiter has not exhausted his administrative remedies.

The Court must dismiss Lassiter's motion because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The provision permitting a defendant-initiated motion for compassionate release includes an exhaustion requirement. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *Raia*, 954 F.3d at 595.

Statutory exhaustion requirements, like the one in § 3582(c)(1)(A), are mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). As the Sixth Circuit has explained, there is a "sharp divide" that "separates statutory from prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 751 (6th Cir. 2019). Unlike judicially crafted requirements, statutory requirements may not be excused, even to account for "special circumstances." *Ross*, 136 S. Ct. at 1856–57.

Section 3582(c)(1)(A) is likely even a *jurisdictional* bar on the Court's authority to consider a motion for compassionate release. The Sixth Circuit has

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 6

labeled § 3582(c)'s limitations "jurisdiction[al]." *United States v. Williams*, 607 F.3d 1123, 1125 (6th Cir.2010). The statute "speak[s] to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994). And it delineates "when, and under what conditions," a court may exercise its "'adjudicatory authority.'" *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005)). But even if § 3582(c)'s requirements were not considered truly jurisdictional, they would still be mandatory claim-processing rules that must be enforced when a party "properly rais[es]" them. *Eberhart*, 546 U.S. at 19. Thus, regardless of how it is labeled, § 3582(c)(1)(A)'s exhaustion requirement is mandatory. *See Ross*, 136 S. Ct. at 1856–57; *United States v. Marshall*, 954 F.3d 823, 826–29 (6th Cir. 2020).

The only court of appeals to address this question has agreed. In *United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020), the Third Circuit held that the COVID-19 pandemic does not permit inmates or district judges to bypass § 3582(c)(1)(A)'s exhaustion requirement. Rather, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at 597.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 7

The majority of district courts to decide this question nationwide, including many in our district, have similarly held that a "failure to exhaust" under § 3582(c)(1)(A) "cannot be excused, even in light of the COVID-19 pandemic." *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at \*2–\*3 (E.D. Mich. Apr. 8, 2020); *accord United States v. Austin*, No. 15-20609, 2020 WL 2507622, at \*2 (E.D. Mich. May 15, 2020); *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at \*2 (E.D. Mich. Apr. 22, 2020); *United States v. Mathews*, No. 14-CR-20427-02, 2020 WL 1873360, at \*2–\*3 (E.D. Mich. Apr. 15, 2020).

Congress's reasons for § 3582(c)(1)(A)'s exhaustion requirement apply with even greater force during the COVID-19 pandemic. The Bureau of Prisons is already responding to the pandemic—not just through heightened safety measures, but by evaluating its entire prison population for home confinement. *See infra* pg 18-21. By requiring a defendant to exhaust, § 3582(c)(1)(A) gives the Bureau of Prisons the opportunity to gather his medical documentation and other records, evaluate his request, and decide in the first instance whether it justifies either compassionate release or some other form of relief. As the Third Circuit observed: "Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 597.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 8

Here, Lassiter did not exhaust his administrative remedies. As he plainly admits, "Mr. Lassiter acknowledges that he has not exhausted all of this BOP remedies." (R. 34: Compassionate Release Motion, 138). Lassiter's request should be denied on that basis alone.

Further, this Court should not ignore Lassiter's failure to exhaust his administrative remedies. Some courts have recognized that there are exceptions to the exhaustion requirement that may apply in situations such as a pandemic. *See e.g., United States v. Donnell Jackson*, No. 11-20492, 2020 WL 2764581, at *1 (E.D. Mich. May 28, 2020) (citing *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *2-4 (E.D. Mich. May 5, 2020)). But if applied, the waiver of the exhaustion should be an individualized assessment on a case-by-case basis. *See Saad*, 2020 WL 2251808, at *2 ("For the reasons that follow, the Court holds that, due to the unique and unforeseen threat posed by the COVID-19 pandemic *to this Defendant because of his specific health conditions*, the exhaustion of administrative process can be waived.") (emphasis added)[1]. In other words, the

---

[1] The defendant in Saad was 71 years old and reported that prior to incarceration he had quadruple bypass, arrythmia, four knee replacement surgeries, poor vision (diabetes), neuropathy, hearing loss, compressed back discs, shortness of breath, rhinopathy (Sinusitis), severe headaches, suspected recurrent bladder cancer, and also had chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, and a frozen thigh from an overdose of coumadin given by prison officials. *Saad*, 2020 WL 2251808, at *1.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 9

Pandemic alone should not confer a blanket waiver of the exhaustion requirement to all defendant's seeking compassionate release due to COVID-19.

Lassiter does not allege that he even attempted to comply with the exhaustion requirement and his medical conditions do not present a situation where he cannot feasibly exhaust his administrative remedies without the potential for serious health consequences. In short, Lassiter has neither satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement nor presented a compelling reason why this Court should excuse that failure.

B.    There are no extraordinary and compelling reasons to grant Lassiter compassionate release.

Even if Lassiter had exhausted his administrative remedies, compassionate release would be improper. Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Because the Sentencing Commission has fulfilled Congress's directive in U.S.S.G. § 1B1.13, that policy statement is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014).

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 10

medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50. U.S.S.G. § 1B1.13 cmt. n.1. As the Tenth Circuit recently explained, a district court "lack[s] jurisdiction" to grant compassionate release when a defendant's circumstances do not fall within those categories. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020).

Lassiter relies on his medical condition and age in support of his claim for compassionate release. Lassiter is 50 years old and presents with moderate chronic kidney disease and benign essential hypertension. (Exhibits 1 and 2). But his medical condition and age do not satisfy the requirements in U.S.S.G. § 1B1.13 cmt. n.1, even when considered in combination with the COVID-19 pandemic.

To meet the criteria for compassionate release based on his medical condition, Lassiter must show either that he suffers from a terminal illness or that his medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.C. § 1B1.13, application note 1. Lassiter's conditions do not satisfy this criteria.

First, there is no evidence that Lassiter is terminally ill. Second, Lassiter does not state, much less provide evidence, that his condition prevents him from

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 11

providing self-care within his correctional facility. Rather, Lassiter's medical history shows that his conditions are being appropriately monitored by medical personnel and neither the medical records nor Lassiter mention that his conditions are preventing him from being from being able to provide self-care.

Further, COVID-19 does not change this analysis. The CDC notes that individuals with chronic kidney disease *who are being treated with dialysis* may be at a higher risk for severe illness due to COVID-19. This is because dialysis patients are more prone to infection and severe illness because of weakened immune systems. But Lassiter does not receive dialysis for his kidney disease; rather, it appears that his kidney issues are controlled with medication alone. (Exhibit 2, pg 7). Also, while the CDC notes that a serious heart condition such as pulmonary hypertension may put people at higher risk for severe illness due to COVID-19, this is not Lassiter's diagnosis. (Exhibit 1, pg. 3); *see also Shah*, 2020 WL 1934930, at *2 (defendant's medical conditions of diabetes and hypertension coupled with the risk of contracting COVID-19 do not present "extraordinary and compelling reasons" justifying early release). Further, Lassiter's benign essential hypertension appears to be well controlled by medication. (Exhibit 1, pg 2-3). So whether considered alone or in combination with COVID-19, Lassiter's medical conditions do not satisfy the initial eligibility criteria for release under U.S.S.G. §

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 12

1B1.13 cmt. n.1; *see United States v. Murphy*, No. 15-20411, 2020 WL 2507619,

at *5–*6 (E.D. Mich. May 15, 2020).

To meet the criteria for compassionate release based on age, Lassiter must

be, among other criteria, at least 65 years old. Being only 50 years old, Lassiter is

disqualified on that basis alone.

Even if this Court were to consider Lassiter to have an elevated risk of

developing the more severe symptoms of COVID-19 due to his medical

conditions, that generalized risk of contracting COVID-19 and potentially

developing the more severe symptoms is not akin to the type of "extraordinary and

compelling reasons" justifying compassionate release identified by the Sentencing

Commission. *See United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2

(E.D. Mich. May 7, 2020). Lassiter has not contracted the virus, and his medical

conditions, in light of his age and access to medication, do not fall in the category

of illnesses with an end of life trajectory, or other reasons, under the Guidelines. In

other words, Lassiter does not present "extraordinary and compelling reasons" to

warrant a sentence reduction.

Finally, even if the combination of Lassiter's medical conditions and the

COVID-19 pandemic satisfied the initial criteria for eligibility in U.S.S.G. §

1B1.13 cmt. n.1, Lassiter would remain ineligible for compassionate release

because he is a danger to the community. Section 1B1.13(2) only permits release if

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 13

a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." It thus prohibits the release of violent offenders.

Lassiter is the epitome of a violent offender. He has a 1989 conviction for assault with intent to murder for which he was sentenced to 180 to 300 months in prison. (PSR ¶ 33). He has a 1993 conviction for armed robbery, UDAA, and felony firearm, for which he was sentenced of 3 to 15 years and 2 years consecutive. (PSR ¶ 34). And his current conviction is for armed bank robbery and brandishing a firearm during and in relation to a crime of violence.

Further, adhering to § 1B1.13(2) is particularly important given the current strain on society's first responders and the rise in certain types of crime during the Pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted COVID-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of violent offenders.

By all metrics, Lassiter's release would endanger the community; section 1B1.13(2) therefore prohibits reducing his sentence.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 14

C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See Austin*, 2020 WL 2507622, at *3–*5 (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *Murphy*, 2020 WL 2507619, at *6 (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Lassiter eligible for compassionate release, the § 3553(a) factors should still disqualify him.

As mentioned, the nature and circumstances of the offense involve Lassiter robbing a bank while brandishing a firearm, and getting away with nearly $380,000. As it relates to his history and characteristics, Lassiter has repeatedly shown that he has no regard for the safety of others. Lassiter's three felony convictions all involve his threatening others with deadly force through the use of firearms. Further, a sentence reduction would frustrate the basic aims of sentencing such as promoting respect for the law, providing just punishment, affording

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 15

adequate deterrence, and, most importantly, protecting the public from further crimes by Lassiter.

### II. The Bureau of Prisons has responded to COVID-19 by protecting inmates and increasing home confinement.

A.   The Bureau of Prisons' precautions have mitigated the risk from COVID-19 within its facilities.

The Bureau of Prisons has reacted quickly to confront COVID-19's spread within its facilities. For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for COVID-19 in January 2020.

On March 13, 2020, the Bureau of Prisons began modifying its operations to implement its COVID-19 Action Plan and minimize the risk of COVID-19 transmission into and inside its facilities. *See* BOP COVID-19 Modified Operations Website. Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *See id.* Only limited group gathering is allowed, and social distancing is maximized. Staff and inmates are also issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation.

Every newly admitted inmate is screened for COVID-19 risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 16

for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for COVID-19 or being cleared by medical staff under the CDC's criteria. In areas with sustained community transmission, all staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with other symptoms can be placed on leave by a medical officer.

Other access to the facilities has likewise been restricted. Contractors are only permitted access if performing essential services, and any contractor who requires access is screened for symptoms and risk factors. Social and legal visits have been suspended to limit the number of people entering the facility and interacting with inmates. But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from COVID-19 completely, despite its best efforts. FCI Elkton, where Lassiter is currently incarcerated, has been one of the BOP facilities most affected by COVID-19. In response, Elkton has adopted even more stringent measures to mitigate the virus. *See Wilson, et.al. v. Williams*, 20-cv-

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 17

794 (N.D. Ohio). With regard to Lassiter, those measures apparently have been successful as he was tested for the virus with negative results, and his medical records do not indicate that he reported having any symptoms. (Exhibit 1, pgs. 1, 18-19). The Bureau of Prisons' measures will help federal inmates remain protected from COVID-19 and ensure that they receive any required medical care during these difficult times.

B.     The Bureau of Prisons is increasing the number of inmates who are granted home confinement.

The Bureau of Prisons has also responded to COVID-19 by increasing the placement of federal prisoners in home confinement. New legislation now temporarily permits the Bureau of Prisons to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement" during the COVID-19 pandemic. Coronavirus Aid, Relief, and Economic Security Act (CARES Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General has also issued two directives, ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1). The directives require the Bureau of Prisons to identify the inmates most at risk from COVID-19 and "to consider the totality of circumstances for each individual

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 18

inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

The Bureau of Prisons' efforts on this point are not hypothetical. Over 3,500 federal inmates have been granted home confinement since the COVID-19 pandemic began, and that number continues to grow. BOP Coronavirus FAQs. As the Attorney General's directives have explained, these home-confinement decisions have required evaluating several criteria:

> 1.) Each inmate's age and vulnerability to COVID-19;
>
> 2.) Whether home confinement would increase or decrease the inmate's risk of contracting COVID-19; and
>
> 3.) Whether the inmate's release into home confinement would risk public safety.

(03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP).

These criteria not only make sense, but also fit the realities of the COVID-19 pandemic far better than any other solution does. The Bureau of Prisons cannot open its facilities' gates indiscriminately and unleash tens of thousands of convicted criminals, en masse. It must focus on the inmates who have the highest risk factors for COVID-19 and are least likely to engage in new criminal activity. This is true not just to protect the public generally, but to avoid the risk that a released defendant will bring COVID-19 back into the jail or prison system if he violates his terms of release or is caught committing a new crime. *See* 18 U.S.C.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 19

§ 3624(g)(5); 34 U.S.C. § 60541(g)(2). The Bureau of Prisons' home-confinement initiative thus appropriately focuses on the inmates who will most benefit from release and whose release is least risky.

The Bureau of Prisons must also balance another important consideration: how likely is an inmate to abide by the CDC's social-distancing protocols or other COVID-19-based restrictions on release? Many inmates—particularly those who have been convicted of serious offenses or have a lengthy criminal record—been already proven unwilling to abide by society's most basic norms. It is more than reasonable to evaluate whether a particular inmate would adhere to release conditions and social-distancing protocols during the pandemic. And if a prisoner would be unlikely to take release conditions or COVID-19 precautions seriously, he would also be far more likely than the general public to contract and spread COVID-19 if released.

Finally, the Bureau of Prisons' home-confinement initiative allows it to marshal and prioritize its limited resources for the inmates and circumstances that are most urgent. For any inmate who is a candidate for home confinement, the Bureau of Prisons must first ensure that his proposed home-confinement location is suitable for release, does not place him at an even greater risk of contracting COVID-19, and does not place members of the public at risk from him. It must assess components of the release plan, including whether the inmate will have

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 20

access to health care and other resources. It must consider myriad other factors, including the limited availability of transportation right now and the probation department's reduced ability to supervise inmates who have been released. All of those decisions require channeling resources to the inmates who are the best candidates for release.

Those types of system-wide resource-allocation decisions are difficult even in normal circumstances. That is why Congress tasked the Bureau of Prisons to make them and has not subjected the decisions to judicial review. 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *United States v. Patino*, No. 18- 20451, 2020 WL 1676766, at *6 (E.D. Mich. Apr. 6, 2020) ("[A]s a general rule, the Court lacks authority to direct the operations of the Bureau of Prisons."). It is especially true now, given the Bureau of Prisons' substantial and ongoing efforts to address the COVID-19 pandemic.

### III.  If the Court were to grant Lassiter's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Lassiter's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 21

# Conclusion

Lassiter's motion for compassionate release should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

Dated: June 2, 2020

*s/ A. TARE WIGOD*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone:  (313) 226-9191
tare.wigod@usdoj.gov
P58479

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 22

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 2, 2020, the foregoing document was electronically filed, by an employee of the United States Attorney's Office, with the Clerk of the Court using the ECF system, and I hereby certify that on June 3, 2020, an employee of the United States Attorney's Office mailed by United States Postal Service the document to the following non-ECF participants:

John Lassiter, Pro Se Petitioner
No. 48432-039
FCI Elkton
Federal Correctional Institution
P.O. Box 10
Lisbon, OH  44432

*s/ A. TARE WIGOD*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone:  (313) 226-9191
tare.wigod@usdoj.gov
P58479

*US v. Lassiter*, 13-cr-20476
United States' Response to Defendant's
Motion for Compassionate Release
Pg. 23